IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILEMON T. ENOCH | : | CIVIL ACTION |
| v. | : | |
| TEMPLE UNIVERSITY HOSPITAL | : | NO. 08-4263 |

MEMORANDUM

Fullam, Sr. J.                                                November 20, 2009

In April 2007, the plaintiff began work as a financial analyst with defendant Temple University Hospital; almost six months later, near the end of his probationary period, he was fired. He has filed suit, alleging discrimination based on race (African-American) and retaliation for a complaint he registered about racial comments made by his co-workers. Temple has moved for summary judgment.

Considering the facts in the light most favorable to the plaintiff, the evidence shows that the plaintiff worked in a department with two other financial analysts: Richard Fry, a Caucasian man and Kanwal Verma, an Indian-American woman. Several other Caucasian men worked in the department in various capacities. Shortly after he began work, Mr. Enoch complained about comments made by co-workers that he thought were racial in nature. Temple investigated, and the employees were directed to apologize to the plaintiff but were not otherwise disciplined. After this incident, other employees, including the plaintiff's supervisor, Mr. McCarron, limited their interactions with the

plaintiff, and the plaintiff felt he was being targeted to be fired.

Two months into his employment, the plaintiff was assigned to take over the weekly "dash report" from one of the co-workers about whom he had complained. This co-worker, Mr. Fry, refused to train the plaintiff on the proper preparation of these reports, and allowed the plaintiff to submit reports that had errors. After Mr. McCarron sat down with the plaintiff and explained the reports, the plaintiff produced error-free reports.

Mr. McCarron was dissatisfied with the plaintiff's performance, and met with Karen McNamara in Human Resources, noting that the plaintiff had made the earlier complaint. A new job description and action plan were created for the plaintiff and presented to him on August 28, 2007. The plaintiff believed that this was not the job for which he had been hired and that he was being set up to quit or be fired. A few weeks later, Temple decided to terminate the plaintiff's employment before his probationary period expired. As part of the decision-making process, the Human Resources representative compared the plaintiff's performance to that of the only other minority employee in the department, Ms. Verma. The plaintiff's work was not compared with that of Mr. Fry, and Human Resources acknowledged that it was unclear whether the plaintiff's performance difficulties were because of a lack of training or skill. Mr. McCarron fired the plaintiff on September 20, 2007; his probationary period would have ended on October 9, 2007. The plaintiff has alleged that this termination constituted unlawful

racial discrimination on a mixed-motive theory, a pretext theory, and disparate treatment, and that he was subjected to retaliation and a hostile work environment.

The evidence submitted by the parties demonstrates that no reasonable jury could conclude that that plaintiff's termination was based on his race. There is no evidence of racial animus on the part of those with decision-making authority, and the fact that the plaintiff's performance was compared only with the other minority employee in the department does not by itself give rise to a discriminatory inference. And in his deposition Mr. Enoch himself repeatedly ascribes his termination and the hostility of his co-workers to retaliation for the earlier complaint, not to his race. Enoch dep. at 222 ("I believe that I was fired because I made racial allegations."); 414 (Q: "And do you believe that they [conspired for you to fail so they could fire you] simply because you filed the Complaint on May 21st?" A: "Yes."); 523-24 (Q: "Assuming that you were a, quote, unquote, poor fit, when do you think that you became a poor fit, at what point?" A: "I think I became a poor fit after I made the complaints" . . . "I think I wasn't fitting in because I was a minority and I think at that point in time when I made a complaint it was like all of the sudden they realized that I was black. I was never black before, you know, until I complained about the jokes that were being made."). Allegations that Mr. Enoch was fired because of his race find scant substantive support in the record.

3

The retaliation claim also fails to withstand scrutiny. This claim is addressed under the familiar McDonnell-Douglas burden-shifting framework: the plaintiff must establish a *prima facie* case of retaliation, after which the employer must proffer legitimate reasons for the action, and the plaintiff must then demonstrate that the reasons are a pretext for retaliation. The *prima facie* case also has three elements: there must be evidence that the plaintiff engaged in protected activity, that the employer took an adverse employment action against him, and that there was a causal connection between the two events. Moore v. City of Phila., 461 F.2d 331, 340 (3d Cir. 2006). The plaintiff has met the first two elements, but has not shown a causal connection between the complaint and his termination. The termination is not particularly close in time to the complaint (and was at the end of the probationary period), and the plaintiff has not produced evidence of a pattern of antagonism or retaliatory motive or shown inconsistent reasons given by the employer for his termination.

Even if the plaintiff could establish a *prima facie* case, there is insufficient evidence to permit a jury to find that the employer's legitimate reasons for the termination (that the plaintiff's work was unsatisfactory and his attitude toward his supervisor uncooperative) were a pretext; the fact that the plaintiff's supervisor and the Human Resources representative noted that a complaint had been made does not give rise to an inference that the complaint motivated their actions.

Finally, the plaintiff cannot establish that certain comments of his co-workers subjected him to a hostile work environment. "[O]ffhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment." <u>Caver v. City of Trenton</u>, 420 F.3d 243, 262 (3d Cir. 2005) (quotations and citations omitted). Here, the comments at issue were not made by supervisors, they were not directed to the plaintiff, those that made them were reprimanded, there were no further comments after the reprimand, and the comments were not so severe as to make working conditions intolerable.

An Order will be entered.

BY THE COURT:

/s/ John P. Fullam
John P. Fullam,    Sr. J.